# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| TOMMIE JEFFERSON, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 21-1489 (RC) |
| | : | | |
| v. | : | Re Document No.: | 18 |
| | : | | |
| LLOYD J. AUSTIN, III, | : | | |
| Secretary of the U.S. Department of Defense, | : | | |
| | : | | |
| Defendant. | : | | |

## <u>MEMORANDUM OPINION</u>

### GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL

## I. INTRODUCTION

Plaintiff Tommie Jefferson sues Defendant Lloyd J. Austin, III, as Secretary of the U.S. Department of Defense, alleging that the Department of Defense ("the Department") violated his rights under the Americans with Disabilities Act ("ADA") Amendments Act of 2008. Compl. at ¶¶ 163–190, ECF No. 1. Specifically, Jefferson alleges that during his time as an HR Specialist at the Department, the Department—with notice of his disabilities—discriminated against him and "refused to accommodate [his] disabilities . . . and instead terminated his employment" in retaliation for making reasonable accommodation requests. *Id.* at ¶ 176. Further, Jefferson alleges that the Department's explanation for his termination was pretextual. *Id.* at ¶¶ 177, 189.

Before the Court is Jefferson's motion to compel certain discovery including responses to interrogatories and document requests, as well as admission requests that Jefferson first served on June 16, 2022 and October 18, 2022, respectively. *See* Pl.'s Mot. Compel Disc. ("Mot.") at 2, ECF No. 18. The Department filed a response objecting to Jefferson's motion, reasoning that the issues Jefferson raises have already been remedied by the Department. *See* Def.'s Opp. Mot.

Compel Disc. ("Def's Opp.") at 1, ECF No. 26. And Jefferson has filed a reply arguing that the Department's remedies are insufficient and insisting that the remaining discovery issues require the Court's intervention. *See* Pl.'s Response to Def's Opp. Mot. Compel Disc. ("Pl.'s Reply") at 1–3, ECF No. 29. For the reasons below, the Court grants in part and denies in part Jefferson's motion to compel discovery.

## II. LEGAL STANDARDS

### A. Discovery Scope

Interrogatories, requests for production, and request for admissions are all discovery devices governed by Federal Rule of Civil Procedure 26(b)'s scope requirements and must be filed within the discovery window set by the Court. *See* Fed. R. Civ. P. 26(b)(1), 33(a)(2), 34(a), 36(a)(1); *Dag Enters., Inc. v. Exxon Mobil Corp.*, 226 F.R.D. 95, 104–05 (D.D.C. 2005). Rule 26(b) permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed R. Civ. P. 26(b)(1); *Ramirez v. U.S. Immigr. & Customs Enf't*, No. 18-cv-508, 2019 WL 11623990, at *1 (D.D.C. June 4, 2019) ("[T]he Federal Rules of Civil Procedure encourage the exchange of information through broad discovery." (citation omitted)). "Relevance is 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense.'" *Breiterman v. U.S. Capitol Police*, 324 F.R.D. 24, 30 (D.D.C. 2018) (citation omitted). Where a party seeks to compel a response to a discovery request, "[t]he party that brings the motion to compel 'bears the initial burden of explaining how the requested information is relevant.'" *Felder v. Wash. Metro. Area Transit Auth.*, 153 F. Supp.3d 221, 224 (D.D.C. 2015) (citation omitted). "Once that showing has been made, the burden shifts to the non-moving party to explain why discovery should not be permitted." *English v. Wash. Metro.*

*Area Transit Auth.*, 323 F.R.D. 1, 8 (D.D.C. 2017) (cleaned up).  Whether discovery is proportional is determined by weighing six factors: (1) the importance of the issues at stake in the action; (2) the amount in controversy; (3) the parties' relative access to relevant information; (4) the parties' resources; (5) the importance of the discovery in resolving the issues; and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit.  *Oxbow Carbon & Mins. LLC v. Union Pac. R.R. Co.*, 322 F.R.D. 1, 6 (D.D.C. 2017); Fed. R. Civ. P. 26(b)(1).  "No single factor is designed to outweigh the other factors in determining whether the discovery sought is proportional . . . ."  *Oxbow*, 322 F.R.D. at 6 (citation omitted).  To satisfy the burden of showing that a discovery request is not proportional, "the refusing party must make a specific, detailed showing."  *Lamaute v. Power*, 339 F.R.D. 29, 35 (D.D.C. 2021).

### B.  Discovery Devices

#### 1.  Interrogatories

"Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath."  Fed. R. Civ. P. 33(b)(3).  A party responds "fully" to an interrogatory when it "provide[s] true, explicit, responsive, complete and candid answers." *Equal Rts. Ctr. v. Post Props., Inc.*, 246 F.R.D. 29, 32 (D.D.C. 2007) (citation omitted).  "The party moving to compel discovery has the burden of proving that the opposing party's answers were incomplete."  *Id.*  The non-movant may respond that "they are unable to provide certain information sought while identifying the information they possess."  *Steele v. United States*, No. 14-cv-1523, WL 2817835, at *5 (D.D.C. July 19, 2022) (citation omitted).  And "the Court cannot compel [the non-movant] to produce materials that it does not possess or information it does not have."  *Id.*

## 2. Requests for Production

"For each item or category" requested, a party "must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request . . . ." Fed. R. Civ. P. 34(b)(2)(B).  A party "may state that it will produce copies of documents or of electronically stored information instead of permitting inspection." *Id.*  The responding party must conduct a "reasonable" search for the requested documents, but may stop when the extent of the search constitutes an "undue burden" that "would be disproportionate to the needs of [the] case." *Prasad v. George Washington Univ.*, 323 F.R.D. 88, 90, 95 (D.D.C. 2017).  "To the extent that documents do not exist, they are not discoverable." *Davis v. Yellen*, No. 08-cv-447, 2021 WL 2566763, at *20 (D.D.C. June 22, 2021).  However, the movant may present evidence "that the documents that have been produced permit a reasonable deduction that other documents may exist or did exist and have been destroyed." *Hubbard v. Potter*, 247 F.R.D. 27, 29 (D.D.C. 2008).

## 3. Requests for Admission

A refusal to admit "must specifically deny [the requested admission] or state in detail why the answering party cannot truthfully admit or deny it." Fed. R. Civ. P. 36(a)(4).  "The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny." *Id.*  While a party may not "object solely on the ground that the request presents a genuine issue for trial," Fed. R. Civ. P. 36(a)(5), an "outright denial of each of the [requests for admission] at issue . . . fulfill[s] its obligations." *United States v. All Assets Held at Bank Julius Baer & Co. Ltd.*, No. 04-cv-798, 2019 WL 1167743, at *5 (D.D.C. Mar. 13, 2019) (internal citations omitted).

### III.  ANALYSIS

At issue here are the Department's responses to nine interrogatory requests and three requests for production that Jefferson alleges are deficient.  *See generally* Pl.'s Reply.[1]  In the course of discovery, Jefferson sent the Department a letter requesting that the Department cure its responses to Jefferson's interrogatories or production requests.  *See* Mot. at 3.  And the Department responded to the letter with responses it claims cured any alleged deficiencies.  *See* Def's Opp. at 2.  Nevertheless, Jefferson contends that many of the Department's responses remain insufficient or deficient.  Pl.'s Reply at 1.  The Court addresses each allegedly deficient interrogatory and request for production in turn.

---

[1] In his motion to compel, Jefferson initially sought to compel responses to his First Request for Admission (RFA) because Jefferson allegedly did not receive responses.  In its opposition, the Department responded that it had served its responses.  The Department explained that its previous counsel had apparently only saved the Responses to its case file but had inadvertently neglected to transmit them to Jefferson.  *See* Def.'s Notice Regarding Opp. Mot. Compel. at 1–2, ECF No. 31.  Once this misunderstanding came to light, the Department served the Responses on Plaintiff's counsel on July 20, 2023.  Ex. A to Def.'s Notice Regarding Opp. Mot. Compel, ECF No. 31-1.  As the Court explains further below, the failure to transmit was likely caused by the abrupt departure of the Department's former counsel and not due to the bad faith of the Department.  To the extent that the Department—though untimely—served its answers to Plaintiff's RFAs, the RFA's are no longer at issue.  However, Jefferson says that earlier transmittal of these responses by the Department may have led to "different or additional discovery choices, earlier resolution of the case, greater mitigation of damages, or other outcomes no longer possible on account of the delay," and that such consequences could not be known until the content of the Department's responses were known.  Reply at 19–20.  Jefferson also requests this Court order the Department to pay attorneys' fees and initiate a show cause proceeding.  *Id.*  The Plaintiff is now in possession of the Department's responses but has not filed any deficiencies in those belated responses.  Though the delay caused is unfortunate, it was due to extraordinary circumstances suffered by the previous Assistant United States Attorney assigned to this case, and the Court will not address it further.

### A. Interrogatories

#### 1. No. 4

Jefferson alleges that the Department's answer to interrogatory number 4 is insufficient because it fails to answer Plaintiff's query.  *Id.* at 4–5.  Interrogatory number 4 asked the Department whether it "contend[s] that providing Mr. Jefferson with a four-tens schedule as of May 19, 2016 would have imposed an undue burden upon its operations?  If so, explain why, including how a four-tens schedule would have imposed a greater burden on operations than the RDO- day off every two weeks schedule- that the Agency approved?"  *Id.* at 4.  Plaintiff's cure letter claimed that the Department "failed to answer as to whether the four-tens schedule would have imposed an undue burden."  *Id.*  The Department's subsequent cured response stated that

> Plaintiff should review Mr. Chevere's deposition transcript from the administrative process, as well as the ROI at 124 ("I have checked with my OHR-5 supervisor IRT Mr. Jefferson working 10 hour days and he informed me that this would unbalance the workload in the team limiting his availability and accessibility to customers and would also delay his professional development as he would be w/o supervision/guidance at least 2 hours a day.  A 4/10 schedule is not in DIA's best interest and would further limit our ability to provide timely service to our customers.").  Whether it was an "undue burden" was not the basis for the determination.  The testimony and documentation clearly set forth the reasoning for the denial of a 4/10 schedule.  See also the Response to Interrogatory No. 3.

*Id.*

Plaintiff asserts that interrogatory number 4 is a contention interrogatory meant to ascertain Defendant's position on whether Jefferson's requested reasonable accommodation would present an undue burden, given that the ADA allows defendants to make such a defense. *Id.* at 4–5; *see also* Fed. R. Civ. P. 33(a)(2) ("An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact . . . .").  And Jefferson asserts that the Department did not provide a straightforward answer to that interrogatory.  *See* Pl.'s Reply at 4–5.  The Court agrees that the Department's response to

interrogatory number 4 is deficient because it fails to "fully" answer Jefferson's question regarding whether granting the four-tens schedule would have presented an undue burden.  *See* Fed. R. Civ. P. 33(b)(3) (requiring interrogatories "be answered . . . fully"); *Equal Rts. Ctr. v. Post Props., Inc.*, 246 F.R.D. 29, 32 (D.D.C. 2007) (a full answer "provide[s] true, explicit, responsive, complete and candid answers." (citation omitted)).  Jefferson's interrogatory question is not, as the Department's answer seems to think, whether an undue burden was the basis for its decision to deny the four-tens schedule at the time it was made, but rather whether the Department plans to raise an undue burden defense after the fact.  But the Court will interpret the Department's response as disclaiming any intent to assert an undue burden defense.  Read in this manner, the Court will deny Jefferson's motion with regard to interrogatory number 4.

### 2.  No. 7

Jefferson contends that the Department's response to interrogatory number 7 and the Department's failure to withdraw a possible affirmative exhaustion defense merits an award of attorneys' fees.  *See* Pl.'s Reply at 5–6.  Interrogatory number 7 requested the Department "[s]tate all facts to support your affirmative defense to the Complaint, that 'Certain of Plaintiff's claims are not actionable because Plaintiff failed to timely exhaust his administrative remedies and/or failed timely to commence this litigation.'"  *Id.* at 5.  Plaintiff's cure letter stated in part that "[the Department] need[s] to drop the exhaustion defense if [they] have no law or facts to support it . . . ."  *Id.*  The Department responded as follows: "At this time, the Defendant no longer asserts that Mr. Jefferson has failed to exhaust administrative remedies.  However, if additional information surfaces during the litigation relating to this issue, the Defendant will provide supplemental responses consistent with Rule 26(e)."  *Id.*  Accordingly, Jefferson asserts

that the Department's delay in rescinding its exhaustion defense until after the instant Motion was filed warrants an award of fees under Fed. R. Civ. P. 37(a)(5)(A).  *Id.* at 5–6.

Under Rule 37(a)(5)(A)(iii), the Court "must not order" a party whose conduct necessitated a motion to compel discovery to pay the reasonable expenses incurred in creating the motion to compel if "other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(a)(5)(A)(iii).  With respect to interrogatory number 7, the Court believes that ordering the payment of fees would be "unjust" under the circumstances.  *Id.*  The Court is aware that the Department's prior counsel experienced a medical emergency causing an abrupt departure and substitution of counsel.  The sudden change in the Department's counsel explains why the Department's decision to withdraw an exhaustion defense was delayed.  Because of these circumstances, the Court declines to grant an award of fees under Rule 37 and denies Jefferson's Motion with respect to interrogatory number 7.

### 3.  No. 9

With respect to interrogatory number 9, Jefferson asserts that the Department failed to provide a full and specific answer.  *See* Pl.'s Reply at 7.  Interrogatory number 9 requested that the Department "[d]escribe and provide all facts pertinent, to whether, during the May 19, 2016 meeting attended by at least Gottschall, Dillard and Jefferson, Jefferson stated Gottschall was implementing unfair performance objectives against[] him, whether Jefferson stated they were different from other employees, and whether Jefferson stated or implied the objectives were discriminatory?"  *Id.* at 6.  Unsatisfied with the Department's initial response, Jefferson's cure letter requested the Department "indicate whether the Agency is denying that Jefferson" made the alleged statements.  *Id.*  The Department's cured response objected that interrogatory 9, as set forth in the cure letter, was a "form of a request for admission, which is improper" and further

referred Plaintiff to Ms. Sanborn's and Ms. Dillard's deposition transcripts for any further information. *Id.* at 7.

Jefferson claims that the transcripts cited to by the Department in its remedied response do not contain the clarifying information sought and that submitting an interrogatory similar to a Request for Admission already asked for is not improper. *Id.* The Department does not provide any legal support for its position that an interrogatory in the form of a request for admission is improper. Regardless, the Court understands Jefferson's cure letter as asking the Department to clarify its earlier response—not as a request for admission. Rather than asking if the Department admits or denies certain statements, Jefferson's interrogatory is "whether the Agency is denying" that Jefferson stated certain things at the May 19th, 2016 meeting—which Jefferson presumably believes is necessary only because the Department's initial response does not answer the question in a sufficiently clear manner. Because the Court agrees that the Department has not fully answered Jefferson's interrogatory, *see Equal Rts. Ctr.*, 246 F.R.D. at 32 (requiring "explicit, responsive, complete and candid answers"), the Court grants Plaintiff's motion as to interrogatory number 9.

### 4.  No. 11

Jefferson likewise asserts that the Department has not responded to interrogatory number 11. *See* Pl.'s Reply at 9. Interrogatory number 11 asked the Department to "[s]tate whether Mr. Jefferson was instructed to keep track of his time down to the minute, to record the exact minutes of his work, his arrival and departure times, and whether there was any applicable policy for whether bathroom breaks were or were not considered as work time?" *Id.* at 7. Jefferson's cure letter alleged that Defendant "failed to answer any of the components of the question," and Defendant's cured response stated that

DIA time and attendance policy stipulates employees must keep track of the hours and minutes worked and annotate that time accurately on their timecard. Information on time-keeping is imparted to all incoming employees during the Touchstone training, to include tracking time accurately. Plaintiff was already provided with DIA's time and attendance policy during the administrative proceeding, at AGY 657-732. Mr. Jefferson was required to attend, and did attend, Touchstone training, and therefore was informed of DIA's time and attendance policies and requirements. Mr. Jefferson's attendance at Touchstone, and DIA policy, prove that he received this information. DIA badge readers are used to determine when an employee begins and ends a workday, and each badge reader records the time every time the badge is swiped, and functions as a "timeclock" for every DIA employee by which their time and attendance can be verified.

*Id.* at 8.

Jefferson argues that the Department's cured response is deficient because the question in Jefferson's interrogatory and cure letter inquired into the "nuances and interpretations of the written policies . . . in question," that are needed to ascertain the parameters within which Jefferson's timekeeping was judged. *Id.* at 9. And Jefferson claims that this interrogatory is especially critical since the Department used "small timekeeping discrepancies" as a basis for firing him. *Id.* The Court agrees that the cured response does not fully respond to Jefferson's interrogatory. For instance, while the Department points to the time and attendance policy already provided to Plaintiff during the administrative proceeding, Jefferson has stated several times that the Department had no policy as to whether bathroom breaks constituted "work time" or whether employees are required to keep track of time in minute increments. *Id.* If Jefferson's contentions are accurate, the Department must say so, rather than directing Jefferson to its policy to ascertain what is *absent* from that policy. Accordingly, the Court grants Jefferson's Motion with respect to interrogatory number 11.

### 5.  No. 12

Likewise, Jefferson contends that interrogatory 12 is deficient. *Id.* at 10. Interrogatory number 12 asked the Department, "[r]regarding the Agency alleged rule prohibiting beginning

work before 6 am, [to] explain how an employee could begin on time for a scheduled 6 am start if they did not badge in before 6 am to get to their desks, and whether badging in before a 6 AM start was a violation?"  *Id.* at 9.  The Department's response references the OHR Division Chief's "decision not to have OHR5 employees working prior to 6:00 AM" and that "[a]ll OHR5 employees would be expected to be at their desk ready to work by their set start time . . . ."  *Id.* The Department's response also said that this meant employees would have to badge in shortly prior to their work day start time to be considered on time.  *Id.*  Jefferson's cure letter stated that the Department "completely failed to answer Plaintiff's interrogatory," but the Department stated that it stood by its response to interrogatory 12.  *Id.*

The Court agrees with Plaintiff that the Department's response to interrogatory 12 remains unresponsive with respect to whether arriving early constituted a violation of the Department's policy; the Department's response does not state clearly whether badging in before 6:00 AM would have been considered a "violation" of the Department's policy.  Contrary to the Department's objection, the Court does not see Plaintiff's use of the term "violation" as vague or ambiguous.  In the context of the question, a violation is an act contrary to a set rule or department decision.  A full answer from the Department on this question is relevant because many of the issues in this case rest on Jefferson's claim that he could not possibly be at work on time while simultaneously not committing violations of workplace rules or decisions.  Thus, the Court grants Jefferson's Motion with respect to interrogatory 12.

### 6.  No. 13

Jefferson also contends that the Department's response to interrogatory number 13 is deficient.  *Id.* at 11.  Interrogatory number 13 asked the Department to "[i]dentify all steps and actions taken by Heather Horsley and Steven Rush, to ascertain whether the punishment to be

inflicted on Mr. Jefferson for the alleged attendance violations was consistent with punishments meted out to others for similar alleged misconduct?"  *Id.* at 10.  The Department responded with *some* helpful information, stating that the "DIA's Table of Penalties set forth the relevant penalties for the actions cited in Plaintiff's Removal letter" and that "[t]he proposed removal and termination were in line with the recommended penalties for probationary employees."  *Id.* Nevertheless, Jefferson objected to the Department's response as "completely non-responsive to the question regarding disparate treatment."  *Id.* at 11.  The Department stood by its responses to interrogatory 13.  *Id.*  Jefferson now claims that the cured response is nonresponsive to the question regarding disparate treatment.  *Id.*

The Court agrees that the Department's response to interrogatory 13 is unsatisfactory as to the question of disparate treatment.  While the Department provides useful information about how Jefferson's penalties were decided, the relevant question in Jefferson's interrogatory is whether this punishment was consistent with punishments given to others for similar conduct. That question is left unanswered.  Additionally, the Court disagrees with the Department's objection that the terms "steps and actions," "punishment," and "similar alleged conduct" are vague and ambiguous.  *Id.* at 10.  The context of this case and interrogatory 13 make clear that "steps and actions" refers to the various measures taken by Jefferson's supervisors before deciding to terminate his employment.  *See Miller v. Holzmann*, 240 F.R.D. 1, 3 (D.D.C. 2006) (explaining based on context and facts of case that interrogatory was not vague).  Similarly, "punishment" in this case clearly refers to the adverse employment action taken against Jefferson, the subject of this suit.  Finally, "similar alleged conduct" refers back to Jefferson's "alleged attendance violations," mentioned earlier in Jefferson's interrogatory.  The Department cannot refuse to answer interrogatories simply by claiming that unambiguous terms are

ambiguous.  The Department must provide an answer explaining what measures Ms. Davis-Conway and Ms. Horsley took to ensure that Mr. Jefferson's punishment was consistent with the punishment historically given to employees with alleged attendance violations, if any.  The Court grants Jefferson's Motion with respect to interrogatory 13.

### 7.  No. 16

Jefferson contends that the Department's response to interrogatory number 16 also evades the relevant interrogatory question.  *See* Pl.'s Reply at 12.  Interrogatory 16 asked the Department to "[s]tate all facts that support or negate, that using the methods referenced within the depositions of Heather Horsley, Kristy Thomas, and Alicia Gottschall, the discrepancies between Mr. Jefferson's time cards and badge records (ADP-000235, 239, 240, 242, 245-246, 599-612) sometimes show Jefferson under-reporting his time on timesheets."  *Id.* at 11.  Plaintiff's cure letter stated that the Department's response "failed to answer the question submitted."  *Id.* at 12.  The Department's cured response stated as follows:

> DIA counts all DIA employees' times by .25-hour increments.  DIA time and attendance policy stipulates employees must keep track of the hours and minutes worked and annotate that time accurately on their timecard.  Information on time-keeping is imparted to all incoming employees during the Touchstone training, to include tracking time accurately.  Plaintiff was already provided with DIA's time and attendance policy during the administrative proceeding, at AGY 657-732.  Mr. Jefferson was required to attend, and did attend, Touchstone training, and therefore was informed of DIA's time and attendance policies and requirements.  Mr. Jefferson's attendance at Touchstone, and DIA policy, prove that he received this information.  DIA badge readers are used to determine when an employee begins and ends a workday, and each badge reader records the time every time the badge is swiped, and functions as a "timeclock" for every DIA employee by which their time and attendance can be verified.  All DIA employees, including Mr. Jefferson, must accurately report their T&A in accordance with all Agency policy, and are not to under-report or over-report their time, and to follow their set and approved work schedule.

*Id.*

Plaintiff asserts that the cured response continues to evade the question asked, and that this interrogatory is especially relevant because time-theft is one of the Department's defenses—even though evidence tends to show that Jefferson underreported, rather than overreported, his time. *Id.*

The Court agrees with Plaintiff.  Interrogatory 16 seeks information about Jefferson's specific timecards, but the Department's response answers with generalities about its time and attendance policy.  Nowhere in its response does the Department provide any facts to "support or negate" that Jefferson occasionally underreported his time worked.  The Department's full response to this interrogatory is relevant to Jefferson's case because the Department's professed reason for terminating Jefferson was timecard fraud.  If there are facts tending to show that Jefferson underreported, rather than overreported, his time, those facts may undermine one of the Department's defenses.  Accordingly, the Court grants Jefferson's motion with respect to interrogatory 16 and orders the Department to respond with any facts supporting or negating Jefferson's underreporting of time.

### 8.  No. 18

Moving on to interrogatory number 18, Jefferson argues that the Department's response was evasive and that the Department lacked justification for its insufficient response. *Id.* at 13–14.  Interrogatory 18 requested that the Department

> Identify all other instances in the Combatant Command Support Branch, from 2014-2018, in which management (a) was apprised of a possible employee time and attendance violation; (b) and/or discovered any possible timekeeping discrepancy [ ] and/or (c) investigated any such possible violation.  Describe management reaction each time discrepancies were identified, by (a) stating the employee's name and job title, whether they were probationary and/or a person with a disability or a person who engaged in protected activity within the definitions of the Rehabilitation Act, and identifying their chain of command; (b) identifying who investigated and the nature of the alleged violation; (c) identifying the extent of the alleged violation including any amount of time improperly claimed by each

such employee; and (d) explaining the disposition of the investigation including what actions were taken by management, who the relevant managers were, and why they chose those actions.

*Id.* at 12–13.  Unsatisfied with the Department's initial response, Jefferson's cure letter asked the

Department to

[C]onfirm that the intent of your response is that from 2014-2018, there were no instances when management (a) was apprised of a possible employee time and attendance violation; (b) and/or discovered any possible timekeeping discrepancy. The answer that you have no other relevant information may carry that meaning but it remains ambiguous.

*Id.* at 13.  The Department's cure response then stated that "[the] Defendant stands by its

response to Interrogatory Number 18," maintaining its objection that interrogatory number 18

seeks information protected by 10 U.S.C. § 424.[2]  *Id.*  The Department generally objects that it is

protected from "disclos[ing] information concerning functions of elements or organizations

within DIA or the number of personnel employed by or assigned to DIA, including their names,

titles, and occupational series."  *See* Ex. 9 to Mot., ECF 18-1. In response, Jefferson says that the

Department "fails to provide [] comprehensive information on comparators" and that the

Department could redact personal identifiers to maintain anonymity—in compliance with § 424.

Pl.'s Reply at 13.

Claims of exemption under § 424 typically arise in cases where a party seeks information

from the DIA through a Freedom of Information Act (FOIA) request.  *See, e.g., Khatchadourian*

*v. Def. Intel. Agency*, 597 F. Supp. 3d 96, 105 (D.D.C. 2022); *Freedom Watch, Inc. v. Nat'l Sec.*

---

[2] In relevant part, 10 U.S.C. § 424 provides disclosure exemptions for (1) the Defense Intelligence Agency, (2) the National Reconnaissance Office, and (3) the National Geospatial-Intelligence Agency.  10 U.S.C. § 424(b)(1)–(3).   The statute exempts from disclosure: "(1) the organization or any function of an organization of the Department of Defense named in subsection (b); or (2) the number of persons employed by or assigned or detailed to any such organization or the name, official title, occupational series, grade, or salary of any such person." *Id.* § 424(a)(1)–(2).

*Agency*, 197 F. Supp. 3d 165, 174 (D.D.C. 2016); *Physicians for Hum. Rts. v. U.S. Dep't of Def.*, 778 F. Supp. 2d 28, 36 (D.D.C. 2011).  In such cases, the DIA has an obligation to establish how the information withheld is properly the subject of the statute before courts will hold that the information is exempt from disclosure.  *See Freedom Watch, Inc.,* 197 F. Supp. at 174 ("DoD has sufficiently established how its limited . . . withholdings are properly the subject of [§ 424].");  *Khatchadourian v. Def. Intel. Agency*, 453 F. Supp. 3d 54, 87 (D.D.C. 2020) (ordering Defendants to "supplement the record to further explain the basis of their withholdings" for all documents withheld on the basis of "revealing DIA functions").

The Court sees no reason why the burden of proving that the information sought is protected from disclosure under § 424 would apply to the Government differently in the context of a civil discovery dispute than it does in a FOIA case.  *C.f. Baldrige v. Shapiro*, 455 U.S. 345, 360 (1982) ("A statute granting a privilege is to be strictly construed so as 'to avoid a construction that would suppress otherwise competent evidence.'" (citation omitted)); *Fed. Trade Comm'n v. TRW, Inc.*, 628 F.2d 207, 213 (D.C. Cir. 1980) ("The burden is on the proponent of the attorney-client privilege to demonstrate its applicability.").  The Department has not definitively established how its withholdings are warranted under § 424; the Department cites to the statute without providing any reasoning for how the information Jefferson seeks falls under the ambit of the statute.  Despite this failure, the Court is mindful of the potential for, and risks attendant to, the release of sensitive information resulting from answering the interrogatory. For instance, it may be that disclosing the information Jefferson seeks could somehow implicitly reveal other protected information.  Accordingly, the Court denies, without prejudice, Jefferson's motion with respect to interrogatory 18, but orders the Department to supplement its response with information explaining why withholding under § 424 is appropriate and why anonymizing

the information through redaction or the use of pseudonyms would not alleviate any concerns.[3]
*See* Fed. R. Civ. P. 26(e)(1)(B) ("A party who has . . . responded to an interrogatory . . . must
supplement or correct its disclosure or response . . . as ordered by the court.").

### 9. No. 19

Lastly, Jefferson takes issue with the Department's response to interrogatory number 19,
which requested the Department "[s]tate whether Defendant ever declined a Jefferson request for
a Four-Tens schedule, and if so, state when such rejections were communicated and all reasons
therefor." Pl.'s Reply at 14.  Once again unsatisfied with the Department's initial response,
Jefferson's cure letter asked the Department to "answer the question as asked, without adding the
phrase 'official request' or any other words that were not part of the Interrogatory." *Id.*  In its
cured response, the Department explained that

> The Agency informally denied Plaintiff's informal request for a four-ten schedule
> following the IAP meeting, when Ms. Gottschall emailed Ms. Dillard following her
> discussion with Mr. Chevere.  Ms. Dillard communicated the decision via the
> granting of his reasonable accommodation of the flexible work schedule, which
> was in-line with his doctor's request for a flexible work schedule.  Plaintiff never
> formally requested to his management (via a written RA request or through the
> Agency's MyHR request portal) a four-ten schedule.

*Id.*

Plaintiff argues that this cured response "does not address when or how a 'decision' was
communicated to Jefferson denying his requested accommodation." *Id.*  The Court agrees.  The
question Jefferson asked Defendant was whether the Agency ever denied Jefferson his request

---

[3] While caselaw in this circuit interpreting 10 U.S.C. § 424 is scarce, this Court has
recognized that the purpose of the provision is "to protect from disclosure how an intelligence
agency such as DIA is structured . . . by protecting the policies by which DIA operates" but not
the "underlying activities themselves."  *Bloche v. Dep't of Def.*, 464 F. Supp. 3d 73, 89 (D.D.C.
2020) (citing *Khatchadourian v. Def. Intel. Agency*, 453 F. Supp. 3d 54, 86 (D.D.C. 2020).

for a four-tens schedule.  Responding that the Agency "communicated the decision via the granting of his reasonable accommodation of the flexible work schedule" seems to allude to an implicit denial of a four-tens schedule when the Agency affirmatively granted some other form of accommodation.  But Jefferson asked whether the Department ever explicitly declined his four-tens request, informal though it may have been.  The Department originally objected that the interrogatory was vague and ambiguous as to the words "request," "Four-Tens schedule", and "rejection."  Jefferson clarified that the terms should be interpreted to encompass informal requests not made through an employee portal.  Further, it is clear from the cure letter that Jefferson intended "rejection" to mean an explicit rejection.  Because the Department does not object to this request on any other grounds, the Court grants Jefferson's Motion with respect to interrogatory 19.

## B.  Request for Production

Having addressed Jefferson's motion to compel interrogatories, the Court moves to Jefferson's requests for production.  With respect to each of Plaintiff's Requests for Production at issue—Nos. 10, 12, and 17—Jefferson's cure letter claims that Defendant "admittedly failed to produce all responsive documents and must do so."  Def's Opp. at 2.  The Court addresses each request in turn.

### 1.  No. 10

Jefferson's Request for Production number 10 requested "all documents relevant to whether and how the Agency did or did not satisfy its obligations to Mr. Jefferson, to participate in the 'interactive process.'"  Pl.'s Reply at 15.  The Department responded to Jefferson's request by objecting that the request was "vague" and "ambiguous as to the words 'obligations' and 'interactive process.'"  *Id.*  However, the Department also stated that it would provide responsive

documents.  *Id.*  Subsequently, Jefferson's cure letter sought assurance that the Department's

response meant that the Department was producing all relevant documents and not withholding

any of the documents for any reason.  *Id.*  The Department's cured response failed to provide

assurance.  *Id.*  The Court understands the Department's initial response to have stated that the

Department would provide all responsive documents.  The Court has no basis on which to

question the Department's initial assertion that it would provide all relevant documents and

accordingly denies Jefferson's motion as to request for production 10.  *See Hubbard v. Potter*,

247 F.R.D. 27, 29 (D.D.C. 2008) (explaining that "[s]peculation that there is more will not

suffice; if the theoretical possibility that more documents exist sufficed to justify additional

discovery, discovery would never end.").  The Department stated that it would provide the

responsive documents and, absent any explanation or justification for withholding any such

documents, the Court will hold the Department to its statement that it has done so.  Accordingly,

the Court denies Jefferson's motion with respect to Request for Production number 10.[4]

### 2.  No. 12

Jefferson's Request for Production number 12 requested that the Department provide "all

documents reflecting the Agency's policies pertaining to when employees may or may not be

afforded a Four-Tens schedule."  Pl.'s Reply at 15.  The Department responded to the request by

stating that Jefferson should "see DIA Instruction 1422.001 'Hours of Duty and Work Schedule'

and DIAI 11400.002 'Civilian Compensation and Work Schedules.'"  *Id.*  Jefferson then sent a

cure letter asking the Department whether the referenced documents included all the responsive

documents that the Department possessed and, if not, requesting that the Department supplement

---

[4] Of course, if the Department attempts to rely on records concerning this issue that were
not previously produced, the Court will entertain a motion to exclude such evidence.

its production.  *Id.*  The Department's May 22, 2023 letter "failed to do so."  *Id.*  Although the Department has not been explicit as to whether the documents cited in its response are exhaustive, the Court has no basis to question the Department's initial response.  *See Hubbard*, 247 F.R.D. at 29; *Prasad v. George Washington Univ.*, 323 F.R.D. 88, 94 (D.D.C. 2017) ("[I]t is not the court's role to dictate how a party should search for relevant information absent a showing that the party has abdicated its responsibility." (citation omitted)).  The Court understands the Department's initial response, and failure to provide additional documents, to mean that it has provided all relevant documents.  The Department "cannot be compelled to produce documents it does not have."  *Caudle v. D.C.*, 263 F.R.D. 29, 40 (D.D.C. 2009) (internal quotation marks and citation omitted).  Accordingly, the Court denies Jefferson's motion with respect to request number 12.

### 3.  No. 17

Finally, Request for Production Number 17 asked the Department to produce

> [f]or the period from January through June 2016 produce the badge swipe, temporary badges, timecard records and all other records reflecting the time and attendance of all Ms. Gottschall's supervisees other than Mr. Jefferson, such that analysis can be fairly conducted as to whether-- he alleges-- Jefferson was subjected to disparate treatment in the interpretation of his time and attendance records.

*Id.* at 16.  The Department objected to this request partly on the basis that the request sought information protected by § 424.  *Id.*  Jefferson countered that "any privacy or confidentiality concerns [raised by § 424] can be addressed."  *Id.*  Defendant elected not to supplement its response.  *Id.*

Jefferson asserts that the Department "could provide the records while redacting the names and replacing them with pseudonyms, while identifying the disability and protected activity statuses of the comparators, without running afoul of [§ 424] . . . ."  *Id.* at 17.  The

information Jefferson seeks in request 17 is certainly relevant to the issue of disparate treatment because it would potentially provide Jefferson with comparator information and provide insight into whether the actions taken against Jefferson were more severe than those taken against similarly situated employees.  *See Wheeler v. Georgetown Univ. Hosp.*, 812 F.3d 1109, 1115 (D.C. Cir. 2016) (explaining that comparator evidence can be relevant to whether an employer's proffered non-discriminatory explanation is pretextual and that such evidence may include "the employer's better treatment of similarly situated employees outside the plaintiff's protected group" and "the employer's pattern of poor treatment of other employees in the same protected group as the plaintiff" (citation omitted)).  The information Jefferson seeks is also tailored to the timeframe in which Jefferson was employed and targets only badge swipes and other timecard records to ascertain any timekeeping discrepancies other than his own.  Therefore, the request is relevant and proportional.  *See Lee v. Pub. Co. Acct. Oversight Bd.*, No. CV 21-1006 (CKK), 2023 WL 4234660, at *4 (D.D.C. June 28, 2023) (explaining that "comparator discovery is relevant and proportional only if it is 'limited to the same form of discrimination claimed by [the] plaintiff, if limited to the same department or agency where [the] plaintiff worked, and if limited to a reasonable time before and after the discrimination complained of.'" (citation omitted)).  The Court is unpersuaded by the Department's objection that such information is "unrelated to the issues in this lawsuit or reasonably calculated to lead to the discovery of admissible evidence."  Pl.'s Reply at 16.

That said, the Court must consider whether ordering the production would run afoul of § 424.  Jefferson proposes one solution for protecting the information he sought from disclosure under § 424: redacting the names of DIA employees.  The Department only provides vague references to § 424 as a justification for withholding its records, without explaining how the

information sought falls within the statute.  However, the Court is mindful of the potential

sensitivity of such records even if partially redacted.  For instance, it may be that disclosing the

times DIA employees arrive and leave work could implicitly reveal other information that is

protected by the statute.  Consequently, and for the same reasons the Court explained with regard

to interrogatory 18, the Court denies Jefferson's Motion without prejudice with respect to request

for production 17 but orders the Department to supplement its response to provide an adequate

explanation for why the Department's withholding is appropriate under § 424 and why

anonymizing the information through redaction or the use of pseudonyms would not alleviate

any concerns.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Compel (ECF No. 18) is **GRANTED IN**

**PART** and **DENIED IN PART** as follows.  The Court **GRANTS** the Motion with respect to

interrogatory numbers 9, 11, 12, 13, 16, and 19.  The Court **DENIES** the Motion with respect to

interrogatory numbers 4, 7, and 18 and requests for production numbers 10, 12, and 17.[5]  The

Court further **ORDERS** the Department to supplement its responses to interrogatory number 18

---

[5] Jefferson's motion to compel and his reply generally seek an "appropriate award of attorneys' fees and costs for Plaintiff's thus-far futile discovery efforts."  Mot. at 8; *see also* Reply at 1–3.  By contrast, the Department's opposition argued that attorneys' fees and costs are not appropriate in this case because it has provided the discovery that Jefferson sought, even if it did so in an untimely manner.  *See* Def's Opp. at 5–6.  Although the Court has held that an award of attorneys' fees and costs is not appropriate with respect to interrogatory number 7, it defers ruling on whether an award of fees and costs is appropriate with respect to Plaintiff's other discovery requests.  Under Rule 37(a)(5)(C), if a motion to compel is granted in part and denied in part, "the [C]ourt . . . may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion."  Fed. R. Civ. P. 37(a)(5)(C).  Because the Court grants Jefferson's motion in part only, the Court has discretion in deciding whether to apportion the parties' reasonable expenses.  *See Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 857 F.3d 939, 951 (D.C. Cir. 2017).  After the Department complies with the Court's Order, Jefferson may file a petition for fees that addresses both his entitlement to any fees and the amount of fees that he seeks.

and request for production number 17 and that Defendant shall file a brief substantiating its

withholdings made under 10 U.S.C. § 424.  An order consistent with this Memorandum Opinion

is separately and contemporaneously issued.

Dated:  February 8, 2024                                    RUDOLPH CONTRERAS
                                                           United States District Judge